# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TIMOTHY C. FITZGERALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-2398 (RBW) |
| | ) | |
| ANTONY J. BLINKEN,[1] | ) | |
| in his official capacity as | ) | |
| Secretary of State of the United States, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

The plaintiff, Timothy C. Fitzgerald, brings this civil action against the defendant, the

Secretary of the Department of State (sometimes referred to as "the Agency" or "the defendant"),

pursuant to (1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-

2000e-16(a), and 42 U.S.C. § 1981a, (2) the Civil Services Reform Act, 5 U.S.C. § 7703(b)(2),

and (3) the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701-795.  See Complaint

("Compl.") at 2, ECF No. 1.  Specifically, the plaintiff asserts: (1) a failure to accommodate

claim based on his position that he was discriminated against when he was not granted

situational telework when his medical ailments "impaired his ability to commute to his duty

station," id. ¶¶ 87, 79–98, 134; (2) a hostile work environment claim, id. ¶¶ 135–36; and (3) a

retaliation claim based on his prior protected Equal Employment Opportunity ("EEO") activity

he initiated after he was not selected for a promotion, id. ¶¶ 132–33.  Currently pending before

the Court is the defendant's motion for summary judgment, pursuant to Federal Rule of Civil

---

[1] Anthony J. Blinken is the current Secretary of State of the United States and is therefore substituted for Michael R. Pompeo as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

Procedure 56.  See Defendant's Motion for Summary Judgment ("Def.'s Motion" or "Def.'s Mot.") at 1, ECF No. 52.  Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must grant the defendant's motion for summary judgment.

## I.     BACKGROUND

### A.     Factual Background

The "[p]laintiff began his employment with the Department of State in the early 1990s as a Computer Specialist."  Defendant's Statement of Material Facts as to Which There is No Genuine Issue ("Def.'s Facts") ¶ 1, ECF No. 52-2; Plaintiff's Response to Defendant's Statement of Material Facts ("Pl.'s Facts") ¶ 1, ECF No. 65-1.  "At all times relevant" to this action, the "[p]laintiff was employed as an Information Technology Specialist ("Security"), GS-2210-14, in the Office of Inspector General ("OIG"), Office of Audits, Information Technology ("IT")."  Def.'s Facts ¶ 2; Pl.'s Facts ¶ 2.  The plaintiff represents that he has a "physical disability" resulting from "knees and lumbar joint disease."  Pl.'s Facts ¶ 3; Def.'s Facts ¶ 3.

The "[p]laintiff previously filed discrimination complaints in March 2005, March 2006 and April 2007[ against the defendant]."  Def.'s Facts ¶ 4; Pl.'s Facts ¶ 4.  On January 14, 2008, "management considered the most effective way to reassign [Office of Information Technology ("OIT")] staff to the Office of Audits and [the Office of Inspections ("ISP")] in order to meet annual Federal Information Security Management Act ("FISMA") and IT inspection requirements."  Def.'s Facts ¶ 8.  Management decided that "[the p]laintiff and three other

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) Defendant's Answer to the Complaint ("Answer"), ECF No. 8; (2) Plaintiff's Opposition to the Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. 65; (3) Defendant's Motion for Partial Judgment, ECF No. 44; (4) Order Granting Partial Judgment, ECF No. 47; (5) Defendant's Reply to Plaintiff's Opposition to the Motion for Summary Judgment ("Def.'s Reply"), ECF No. 74.

employees [who] constitut[ed] the core staff that [ ] conducted the annual FISMA reviews for [the] OIG [would be] reassigned to the Office of Audits." Def.'s Facts ¶ 9; see also id. ¶ 10; Pl.'s Facts ¶ 9; see also id. ¶ 10. "The OIT was thereafter dissolved on January 18, 2008[.]" Def.'s Facts ¶ 10; Pl.'s Facts ¶ 10.

"On or about March 2009, [the] OIG posted vacancy announcements for two positions: (1) a GS-2210-15, Supervisory IT Specialist (Policy and Planning), under vacancy announcement OIG 2009-0026; and (2) a GS-511-15 Supervisory Auditor, under vacancy announcement OIG-2009-024." Def.'s Facts ¶ 11' Pl.'s Facts ¶ 11.  The "[p]laintiff applied for the Supervisory IT Specialist position[.]" Def.'s Facts ¶ 12; Pl.'s Facts ¶ 12.  "There were a total of 18 applicants for the GS-2210 and GS-511 series vacancy announcements." Def.'s Facts ¶ 13; Pl.'s Facts ¶ 13.  The "[p]laintiff was among those qualified for the GS-2210 series position, and his application was referred to the selecting official for consideration." Def.'s Facts ¶ 15; Pl.'s Facts ¶ 15.  "[F]ive candidates from the Certificates of Eligibles [("CERTs")], including [the p]laintiff, were selected to be interviewed.  Def.'s Facts ¶ 16.  Karen Bell, the "Deputy Assistant Inspector General for Audits, interviewed the five applicants and was the selecting official for the position." Def.'s Facts ¶ 17; Pl.'s Facts ¶ 17.  The "[p]laintiff was interviewed on April 29, 2009[,] with [Ms.] Bell as "the only interviewer." Def.'s Facts ¶ 21; Pl.'s Facts ¶ 21.  Ms. Bell "testified that ensuring adherence to [Generally Accepted Government Auditing Standards or] [(']GAGAS[')] was a qualification [for] the position, that writing was a critical element for the position, and other candidates were more qualified than [the p]laintiff." Def.'s Facts ¶ 26; Pl.'s Facts ¶ 26.  "On May 21, 2009, [the p]laintiff was informed by Human Resources ("HR") Specialist Clara Taylor that he was not selected for the position." Def.'s Facts ¶ 29; Pl.'s Facts ¶ 29.

"In January 2010, Evelyn Klemstine, then the Assistant Inspector General for Audits, advised her staff members that she wanted all employees who had prior approved telework agreements to withdraw those agreements and resubmit new ones."  Def.'s Facts ¶ 34; Pl.'s Facts ¶ 34.  "[O]n January 20, 2010, [the p]laintiff submitted a request to his supervisor, [Christian] Ikeanyi, for review and approval of his telework agreement."  Def.'s Facts ¶ 35; Pl.'s Facts ¶ 35. "On January 22, 2010, Mr. Ikeanyi responded that he needed to meet with [the p]laintiff to review the request before he could approve it, and he asked [the p]laintiff to identify materials and equipment that were required to perform his duties, as well as the expected impact of teleworking on the work and efficiency of the office."  Def.'s Facts ¶ 36; Pl.'s Facts ¶ 36.  On January 25, 2010, the "[p]laintiff responded to Mr. Ikeanyi's request stating" that he was making a "situational and an accommodation request."  Def.'s Facts ¶ 37; Pl.'s Facts ¶ 37.  Situational telework was "an arrangement for an employee who performs official work duties away from the official work site or office on an irregular basis, at least one full day a month."  Def.'s Facts ¶ 33; Pl.'s Facts ¶ 33.  The "[p]laintiff reapplied for telework on February 25, 2010 [and his] situational telework agreement was approved by Mr. Ikeanyi" that same day, "and by the Bureau EX Director, [David] Yeutter, on April 12, 2010."  Def.'s Facts ¶ 39; Pl.'s Facts ¶ 39.  However, "the classified work assigned to [the plaintiff] at the Agency was required to be performed in the workplace and could not be performed remotely."  Def.'s Facts ¶ 42; Pl.'s Facts ¶ 42.  And under the new Agency policy, the plaintiff was not allowed same-day telework approval.  See Def.'s Facts ¶ 46; Pl.'s Facts ¶ 46.

When Mr. Ikeanyi "became aware that [the p]laintiff was requesting telework as an accommodation [for] his alleged disability, on February 9, 2010, Mr. Ikeanyi e-mailed [the p]laintiff and advised him that if he wished to pursue a request to work at home on the basis of a

reasonable accommodation, he should follow the agency process to request a reasonable accommodation, which Mr. Ikeanyi outlined for him." Def.'s Facts ¶ 51; Pl.'s Facts ¶ 51. The plaintiff then "made his request for a reasonable accommodation on April 19, 2010, via facsimile to a component of the Department of State's Bureau of Human Resources called the Disability/Reasonable Accommodation Division ('DRAD'), which was authorized to grant reasonable accommodations. Def.'s Facts ¶ 52; Pl.'s Facts ¶ 52. The plaintiff's "reasonable accommodation request consisted of: 1) a filled out copy of the Department of State's Medical Questionnaire for Assessment of Disability/Reasonable Accommodation signed by [the p]laintiff on April 14, 2010; 2) a letter from Dr. Unmi Kim, a staff physician at the Washington VA Medical Center and Orthopaedic Surgery Service, [that included] medical records from five years earlier in 2005; 3) an unsigned copy of [the plaintiff's] Civil Service Performance Plan and Appraisal from March 2009; and 4) an Employee Statement describing the difficulties he was experiencing in his job." Def.'s Facts ¶ 53; Pl.'s Facts ¶ 53. "Through the reasonable accommodation request, [the p]laintiff sought to have situational telework on an unscheduled basis." Def.'s Facts ¶ 54; Pl.'s Facts ¶ 54. "After receiving and reviewing the medical documentation provided by [the p]laintiff in support of his reasonable accommodation request, Dr. Lawrence W. Gernon of the State Department's Office of Medical Affairs ('MED')[,] advised [the] DRAD on April 30, 2010, that the 'old [medical] notes dated 2005' along with 'the MRI/X-rays from the past' provided 'very little justification' for [the p]laintiff's requested accommodation." Def.'s Facts ¶ 55; Pl.'s Facts ¶ 55.

On May 3, 2010, the plaintiff emailed Mr. Ikeanyi and "alleged that Mr. Ikeanyi denied his request to take situational telework on three occasions." Def.'s Facts ¶ 44; Pl.'s Facts ¶ 44. These requests "were made the same day [the plaintiff] wanted to telework [and] were made

prior to any doctor providing an opinion on [the p]laintiff's reasonable accommodation request." Def.'s Facts ¶ 45; Pl.'s Facts ¶ 45.

On June 4, 2010, [the] DRAD advised the plaintiff "that it had not made any determination whether [the p]laintiff was a qualified individual with a disability, and requested that he submit information to [the] MED so that [the] MED and [the] DRAD could conduct an individualized assessment." Def.'s Facts ¶ 57; Pl.'s Facts ¶ 57. The "[p]laintiff provid[ed] [the] DRAD with updated records in support of his reasonable accommodation request [in] November 2010." Def.'s Facts ¶ 56; Pl.'s Facts ¶ 56. "In late November [2010],[3] [the plaintiff] faxed [the] MED additional supporting medical information." Def.'s Facts ¶ 64; Pl.'s Facts ¶ 64. "On November 30, [2010], a new State Department doctor in [the] MED, Edward Miron, provided an opinion to [the] State Department's HR department that based on the additional medical documentation received from [the p]laintiff in November [2010], [the p]laintiff's medical condition could be considered a Disability under the ADA." Def.'s Facts ¶ 65; Pl.'s Facts ¶ 65. "[I]n or around 2011, due to his physical disability, [the p]laintiff's attendance at work stopped or became unacceptable, and in [July] 2011, [the p]laintiff applied for disability retirement." Def.'s Facts ¶ 66; Pl.'s Facts ¶ 66. The "[p]laintiff was granted disability retirement effective December 2, 2011." Def.'s Facts ¶ 71; Pl.'s Facts ¶ 71.

## B.    Procedural Background

The plaintiff filed his Complaint in this case on November 7, 2017. See Compl. The plaintiff "named as [d]efendants the head of the agency as well as four agency employees . . . in

---

[3] While the parties claim this event occurred in 2020, the overall timeline of events leads the Court to conclude that the event actually occurred in November 2010. See Def.'s Facts ¶ 56; Pl.'s Facts ¶ 56 ("The plaintiff provid[ed] [the] DRAD with updated records in support of his reasonable accommodation request [in] November 2010.") and Def.'s Facts ¶ 66; Pl.'s Facts ¶ 66 ("[The] DRAD had not yet finalized its individual assessment or officially approved the plaintiff's request when he applied for disability retirement in 2011."). The Court will therefore construe the parties' references to 2020 as a typographical error and conclude that the parties intended to refer to the year 2010 rather than the year 2020.

their official capacities." Memorandum in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem.") at 4, ECF No. 52-1. The defendant filed an Answer to the Complaint on March 19, 2018. <u>See</u> Answer. The parties engaged in discovery from July 2018 through November 2019. <u>See</u> Def.'s Mem. at 4. On November 20, 2019, the defendant filed his Motion for Partial Judgment on the Pleadings, pursuant to Rule 12(c). <u>See</u> Motion for Partial Judgment on the Pleadings. On January 23, 2020, the Court granted the defendant's Motion for Partial Judgment on the Pleadings and dismissed the four individually named employees. <u>See</u> Order, ECF No. 47. On June 15, 2020, the defendant filed his motion for summary judgment, <u>see</u> Def.'s Mot., on November 9, 2020, the plaintiff filed his opposition to the defendant's motion for summary judgment, <u>see</u> Pl.'s Opp'n., and on May 7, 2021, and the defendant filed his reply in response to the plaintiff's opposition, <u>see</u> Def.'s Reply.

## II.    STANDARDS OF REVIEW

### A.    Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), the plaintiff "bears the burden of invoking the court's subject matter jurisdiction" to adjudicate his claims. <u>Arpaio v. Obama</u>, 797 F.3d 11, 19 (D.C. Cir. 2015). "'Federal Courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" <u>Gunn v. Minton</u>, 568 U.S. 251, 256 (2013) (quoting <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375, 377 (1994)). Indeed, federal courts are "forbidden . . . from acting beyond [their] authority," <u>NetworkIP, LLC v. Fed. Comm. Comm'n</u>, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist . . . to hear each dispute,'" <u>James Madison Ltd. ex rel. Hecht v. Ludwig</u>, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting <u>Herbert v. Nat'l Acad. of Scis.</u>, 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent

subject matter jurisdiction over a case, "the court shall dismiss the action." Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006) (internal quotation marks omitted).  When necessary, the court may "undertake an independent investigation to assure itself of its own subject matter jurisdiction," Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (internal quotation marks omitted), and may consider facts developed in the record beyond the complaint, id.  Accordingly, a "district court may consider materials outside the pleadings." Jerome Stevens Pharm., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005).

**B.      Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56**

A court may grant a Rule 56 motion for summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment[.]"  Id.  The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Accordingly, unsupported allegations or conclusory statements are not sufficient to defeat summary judgment, see Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp., 564 F.3d 462, 465–66 (D.C. Cir. 2009); Pub. Citizen Health Rsch. Grp. v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (Garland, J. concurring) ("[C]onclusory allegations unsupported by factual data will not create a triable issue of fact." (citations and internal quotation marks omitted)).  And the non-moving party "must set forth specific facts showing that there [are] genuine issue[s] for trial," Anderson, 477 U.S. at 256. Therefore, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to withstand a summary judgment motion; rather, "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

When a non-moving party supports their position via affidavit or declaration, "[it] must set forth . . . specific facts[,]" Ass'n of Flight Attendants-CWA, 564 F.3d at 465 (internal quotation marks omitted), pursuant to Rule 56(e), "that is, it 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated,'" id. (quoting Fed. R. Civ. P. 56(e)(1)).  "Although, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule."  Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999); see also Dist. Intown Props. Ltd. P'ship v. District of Columbia, 198 F.3d 874, 878 (D.C. Cir. 1999) ("[T]he court must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record." (emphasis added)).  The plaintiff

"must support his allegations . . . with facts in the record; a mere unsubstantiated allegation . . . creates no genuine issue of fact and will not withstand summary judgment[.]" Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993).

"As employers rarely maintain records directly evidencing discrimination, 'an added measure of rigor, or caution, is appropriate in applying this standard to motions for summary judgment in employment discrimination cases.'" Woodruff v. Peters, 482 F.3d 521, 526 (D.C. Cir. 2007) (quoting Aka v. Wash. Hosp. Ctr., 116 F.3d 876, 879–80 (D.C. Cir. 1997)).

## III.    ANALYSIS

The plaintiff claims that: (1) the "Department of State has discriminated against [him] by denying him reasonable accommodation for his disabilities," in violation of the Rehabilitation Act of 1973, as amended, Compl. ¶ 134(a); (2) "[t]he [d]efendant's conduct . . . constitute[d a] hostile and abusive working environment in violation of Title VII and the Rehabilitation Act[,]" id. ¶ 136; and (3) his non-selection for a promotion "constitute[d] retaliation against [him] because he engaged in activities protected by Title VII[,]" id. ¶ 133.

The defendant argues that "there is no genuine dispute as to any material fact and [the d]efendant is entitled to judgment as a matter of law." Def.'s Mot. at 1. More specifically, the defendant first claims that the plaintiff "failed to administratively exhaust" his failure to accommodate claim under the Rehabilitation Act, id., and "failed to establish a prima facie case of failure to reasonably accommodate [him] because, even with a reasonable accommodation, [the p]laintiff was not able to perform the essential functions of his job," id. Additionally, the defendant argues that the plaintiff did not timely exhaust his hostile work environment claim, see id. at 3 n.1, but in any event maintains that "the events that [the plaintiff] complains of were normal workplace interactions, and not expressions of hostility due to reprisal[,]" id. at 1–2. And

finally, with respect to the plaintiff's retaliation claim, the defendant claims that "the undisputed facts [ ] demonstrate" that the Agency had a non-retaliatory, non-discriminatory reason for the plaintiff's non-selection.  Id. at 16.

The Court will first address the plaintiff's Rehabilitation Act claim and determine (1) whether the plaintiff administratively exhausted his failure to accommodate claim, and (2) whether the plaintiff has established a prima facie case of discrimination when the Agency allegedly refused to provide him with a reasonable accommodation.  Next, the Court will consider the plaintiff's Title VII claims and determine whether the plaintiff administratively exhausted his claims alleging a hostile work environment and retaliation in response to his EEO activity by denying him the ability to telework to accommodate his medical situation.  Finally, the Court will consider whether there is a genuine issue as to any material fact regarding the plaintiff's non-selection for the supervisory position for which he applied.

## A. Whether the Plaintiff Administratively Exhausted his Failure to Accommodate Claim under the Rehabilitation Act.

The Court will first address whether the plaintiff has administratively exhausted his Rehabilitation Act claims.  The defendant argues that "[the p]laintiff's administrative complaint framed the [defendant]'s denial of his situational telework requests only as a Title VII reprisal claim[,]" Def.'s Mem. at 9, and thus, "[b]ecause the Rehabilitation Act requires administrative exhaustion, [the p]laintiff's failure to administratively exhaust a failure to accommodate claim is fatal to Count 2 of [his] Complaint in this . . . action[,]" id. at 10.  In opposition to the defendant's argument, the plaintiff argues that "[i]n th[e administrative] complaint, he checked off physical disability[ ] as one basis for discrimination."  Pl.'s Opp'n at 7.  The plaintiff further argues that because "[his] failure-to-accommodate claim revolves around the same repeated denial of the specific type of situational telework that [he] needed to accommodate his

11

disabilities[,] . . . the core basis for the failure-to-accommodate claim is 'like or reasonably related to the allegations of the charge and growing out of such allegations [that he alleged in his administrative complaint.]'" Id. (quoting Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995)).  In reply, the defendant argues that "the D.C. Circuit explicitly declined to reach the question of whether the 'like or reasonable related' test articulated in Park, and relied upon by [the p]laintiff, survived the Supreme Court's subsequent decision in Nat[']l R[.R.] Passenger Corp. v. Morgan, 536 U.S. 101 (2002)."  Def.'s Reply at 3; see also Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir. 2010) ("We need not decide whether Morgan did in fact overtake [the Park] line of cases[.]").

The Rehabilitation Act "directs courts to employ the standards of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 [ ], in evaluating suits that . . . allege that an employer unlawfully denied an accommodation."  Solomon v. Vilsack, 763 F.3d 1, 5 (D.C. Cir. 2014).  "[T]he Rehabilitation Act requires federal employers to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  Id. (quoting 42 U.S.C. § 12112(b)(5)(A)).  "An individual with a disability includes a person with a physical or mental impairment that substantially limits one or more major life activities."  Id. (quoting 42 U.S.C. § 12102(1)(A)).  "To be a qualified individual entitled to the Rehabilitation Act's protections, an individual must be able to perform, with or without reasonable accommodation, the essential functions of the employment position that such individual holds or desires."  Id. (quoting 42 U.S.C. § 12111(8)).

The Rehabilitation Act "limits judicial review to employees 'aggrieved by the final disposition' of their administrative 'complaint[.]'"  Spinelli v. Goss, 446 F.3d 159, 162 (D.C. Cir. 2006) (quoting 29 U.S.C. § 794a(a)(1)).  Thus, an individual suing under the Rehabilitation

Act must "exhaust [his] administrative remedies before [he] can file suit to enforce the Act's protections." Doak v. Johnson, 798 F.3d 1096, 1099 (D.C. Cir. 2015). Because administrative exhaustion is mandated by the Rehabilitation Act, "a court cannot excuse it." Avocados Plus Inc. v. Veneman, 370 F.3d 1243, 1247 (D.C. Cir. 2004).

The Supreme Court has held "that each discrete adverse employment action triggers the statutory exhaustion requirement[.]" Reshard v. Lahood, No. 87-2794 (RBW), 2010 WL 1379806, at *13 (D.D.C. Apr. 7, 2010), aff'd, 443 F. App'x 568 (D.C. Cir. 2011) (citing Morgan, 536 U.S. at 114). Specifically, "[d]iscrete acts . . . 'such as termination, failure to promote, denial of transfer, or refusal to hire are individual acts that occur at a fixed time . . . [and] plaintiffs alleging such discriminatory action must exhaust the administrative process regardless of any relationship that may exist between those discrete claims and any others.'" Id. (alterations in original) (quoting Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 138 (D.D.C. 2004)). However, "there is considerable uncertainty regarding how such claims should be treated[,]" Mount v. Johnson, 36 F. Supp. 3d 74, 84 (D.D.C. 2014) (Brown Jackson, J.), and "district judges within this jurisdiction are at odds regarding 'the extent to which Morgan [also] requires exhaustion of claims based on discrete discriminatory acts that occurred after the filing of an EEO charge[,]" id. (alterations in original) (quoting Rashad v. Wash. Metro. Area Transit Auth., 945 F. Supp. 2d 152, 166 (D.D.C. 2013)). Despite this uncertainty, the predominant view from several members of this Court applying Morgan is "that a plaintiff must exhaust his administrative remedies with respect to distinct acts that occurred after the filing of an administrative charge." Hunter v. District of Columbia, 797 F. Supp. 2d 86, 95 (D.D.C. 2011) (Berman Jackson, J.); accord Reshard, 2010 WL 1379806, at *13 (Walton, J.); Camp v. District of Columbia, No. 04-234, 2006 WL 667956, at *7–8 (D.D.C. Mar. 14, 2006) (Kollar-Kotelly,

J.); Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139, 149 (D.D.C. 2005) (Lamberth, J.); Keeley

v. Small, 391 F. Supp. 2d 30, 40–41 (D.D.C. 2005) (Bates, J.); Coleman-Adebayo, 326 F. Supp.

2d at 138 (Friedman, J.). But see Nguyen v. Mabus, 895 F. Supp. 2d 158, 184 (D.D.C. 2012)

(Sullivan, J.) (Holding that a claim is administratively exhausted if "it is at least plausible that the

. . . claim is sufficiently related to the claims in [the plaintiff]'s [ ] administrative complaint[.]").

Here, the Court finds that the defendant has failed to carry his burden to prove that the

plaintiff did not adequately exhaust his failure to accommodate claim under the Rehabilitation

Act.  See Nguyen, 895 F. Supp. 2d at 184 ("Because exhaustion of administrative remedies is an

affirmative defense, [the d]efendant bears the burden of pleading and proving it.").  The

defendant argues that "[the p]laintiff's administrative complaint framed the Agency's denial of

his situational telework requests only as a Title VII reprisal claim[,]" Def.'s Mem. at 9, but the

record does not support that position.  Indeed, upon review of the plaintiff's EEO complaint, he

alleged that he was discriminated against when "[o]n numerous occasions, [his] requests for

situational telework were denied[.]" Def.'s Mot., Exhibit ("Ex.") 2 (Excerpts of the Agency's

Report of Investigation ("Def.'s ROI Excerpts")) at 94, ECF No. 52-4; see also Pl.'s Opp'n at 7.

The plaintiff also "checked off physical disability[] as one basis for discrimination[,]" Pl.'s

Opp'n at 7; see also Def.'s Mot., Ex. 2 (Def.'s ROI Excerpts) at 54, in his EEO complaint, which

directly implicates the Rehabilitation Act, Bonnette v. Shinseki, 907 F. Supp. 2d 54, 77 (D.D.C.

2012) ("The Rehabilitation Act requires employers to provide reasonable accommodations to the

known physical or mental limitations of an otherwise qualified individual with a disability[.]"

(internal quotation marks omitted)).  And as the plaintiff correctly points out, "it is clear that the

investigator included [the p]laintiff's 'disability allegation' in the investigation[,]" into his

allegations of discrimination.  Pl.'s Opp'n at 7 (citing Def.'s Mot., Ex. 2 (Def.'s ROI Excerpts) at 113).

Furthermore, although the defendant is correct that "the D.C. Circuit [in Payne] explicitly declined to reach the question of whether the like or reasonable related test articulated in Park . . . survived the Supreme Court's [ ] decision in [Morgan,]" Def.'s Reply at 3; see also Payne, 619 F.3d at 65, and that the "question [apparently] remains an open one in this Circuit[,]" Def.'s Reply at 3, the Court "declines to accept either party's invitation to decide the underlying legal issue because the Court concludes that resolution of that dispute makes no difference in this case[,]" Mount, 36 F. Supp. 3d at 87 (declining to "choos[e] sides" in the intra-district split regarding whether Morgan abrogated Park).  The defendant argues that "[the p]laintiff cannot 'piggyback' a new discre[te] act" to his 2010 EEO complaint, Def.'s Reply at 4–5, but the plaintiff's failure to accommodate claim is not as constrained as the defendant suggests, see Compl. ¶ 87 ("During the spring of 2010, [the p]laintiff periodically requested a reasonable accommodation in the form of situational teleworking[]"); Pl.'s Opp'n at 7 ("The incidents where [ ] situational telework was denied as of the filing of [the p]laintiff's [EEO] complaint are the same as the accepted 'situational telework' issue[]").[4]  Indeed, the plaintiff explicitly referenced the denial of situational telework because of his disability during the EEO investigation, see id., Ex. 1 (Plaintiff's EEO Investigation Affidavit (July 2, 2010) ("EEO Investigation Affidavit")) at 113–114, ECF No. 65-3 (explaining the situations where he was

---

[4] The defendant focuses on the following allegations in two of the plaintiff's filings—one in the plaintiff's Complaint, see Compl. ¶ 2 ("[L]eaving the Federal service employment when the discrimination / retaliation caused his incapacity[]"), and another in his opposition brief, see Pl.'s Opp'n at 11 ("Had [the plaintiff] been granted an RA that allowed for more flexible situational telework . . . he likely would have been able to continue working[]")—to suggest that the plaintiff alleges a "constructive discharge[ claim,]" Def.'s Reply at 4 n.3, in connection with his failure to accommodate claims.  However, as the Court discussed above, these allegations do not encompass the entirety of the plaintiff's failure to accommodate claim under the Rehabilitation Act.  Although the Court does not construe it as such, to the extent that the plaintiff raises a constructive discharge claim, that claim would be unexhausted, and the Court would not have jurisdiction to address it.

denied situational telework), his allegations were also considered by the EEOC administrative judge, see Def.'s Mot., Ex. 8 (Decision on Record Complaint of Timothy C. Fitzgerald Findings of Fact and Conclusions of Law (March 26, 2015) ("2015 EEO Decision")) at 1–2, ECF No. 52-10, and yet again in the final EEO Decision, see Compl., Ex. (EEOC Decision (September 22, 2017) ("2017 EEO Decision")) at 2, ECF No. 1.  Thus, the Court finds that the plaintiff exhausted his administrative remedies in regards to his claim that the Agency failed to accommodate him by denying his requests for situational telework.

To the extent the plaintiff alleges any ongoing failure to accommodate claims in regards to his situational telework requests that continued after he filed his EEO complaint, they, "at a minimum[,] . . . arise from the administrative investigation[,] [as they were] reasonably expected to follow the charge of discrimination."  Payne, 619 F.3d at 65 (cleaned up); see also Test v. Holder, 614 F. Supp. 2d 73, 83 (D.D.C. 2009) (same).  Accordingly, the Court also finds that the plaintiff has exhausted his administrative remedies in regards to his Rehabilitation Act claim.

**B.  Whether the Plaintiff has Established a <u>Prima Facie</u> Case of Discrimination for the Failure to Accommodate his Disability.**

Having found that the plaintiff exhausted his administrative remedies as to his Rehabilitation Act claim, the Court will now consider whether the plaintiff established a prima facie case for the alleged refusal to grant him a reasonable accommodation.  The defendant argues that "[b]ecause [the p]laintiff cannot demonstrate that he could have performed the essential functions of his job with a reasonable accommodation, and by his own admission he in fact could not since at least as early as 2008, he has failed to establish a prima facie case[ of discrimination for his failure to accommodate claim], and summary judgment should be granted to [the Agency]."  Def.'s Mem. at 12.  The plaintiff responds that he "was able to perform essential functions of his job while teleworking[,]" Pl.'s Opp'n at 8, because "[he] was able to

work while on his prescribed pain medications[,]" id. at 9, and because "[t]he majority of [his] job involved accessing only non-classified information[,]" id.  For the following reasons, the Court must conclude that the plaintiff has not made a prima facie showing for failure to accommodate his situational telework requests.

To establish a failure to accommodate prima facie case, a plaintiff must show that "(1) [ ] he or she was an individual who had a disability within the meaning of the [Rehabilitation Act]; (2) that the employer had notice of the disability; (3) that with [a] reasonable accommodation the employee could perform the essential functions of the position; and (4) that the employer refused to make such accommodations."  Buie v. Berrien, 85 F. Supp. 3d 161, 171–172 (D.D.C. 2015) (quoting Brown v. Snow, 407 F. Supp. 2d 61, 67 (D.D.C. 2005)).  "If a plaintiff establishes a prima facie case of failure to accommodate, then it is up to the employer to demonstrate that the requested accommodation would have imposed an undue burden on its business[,]" id. at 172, however, "the ultimate burden [ ] remains with the plaintiff."  Faison v. Vance-Cooks, 896 F. Supp. 2d 37, 49 (D.D.C. 2012) (citing Barth v. Gelb, 2 F.3d 1180, 1183 (D.C. Cir. 1993) (explaining that reasonable accommodation claims should be tested through the "application of traditional burdens of proof" rather than the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

"To survive summary judgment[,] . . . a plaintiff must show that the accommodation he requested was reasonable and that the defendant failed to provide it."  Buie, 85 F. Supp. 3d at 172.  A "'[r]easonable accommodation' may include 'job restructuring' and 'part-time or modified work schedules.'"  Woodruff, 482 F.3d at 527 (citing 42 U.S.C. § 12111(9)(B)).  "In this context, consideration shall be given to the employer's judgment as to what functions of a job are essential."  Id. (internal quotation marks omitted).  "The employee has the burden of

identifying reasonable accommodations, and the agency has the burden of showing undue

hardship." Graffius v. Shinseki, 672 F. Supp. 2d 119, 126 (D.D.C. 2009) (citing Chinchillo v.

Powell, 236 F. Supp. 2d 18, 23–24 (D.D.C. 2003)).  "Undue hardship' means 'an action

requiring significant difficulty or expense,' as measured by various statutory factors."  Woodruff,

487 F.3d at 527 (citing 42 U.S.C. § 12111(10)(A)).

The record is undisputed that the plaintiff was disabled, and that the Agency had notice of

his disability, thereby establishing the first two elements of a prima facie case for his failure to

accommodate claim.  See Def.'s Facts ¶ 3; Pl.'s Facts ¶ 3.  Accordingly, the Court will proceed

to assess whether the plaintiff could, with reasonable accommodations, perform the essential

functions of his position, and whether the Agency refused him such reasonable accommodations

through a good faith interactive process.

1. **Whether the Plaintiff Could Perform the Essential Functions of his Position with his Requested Accommodations.**

The defendant argues that the plaintiff "was unable to perform the essential functions of

his position" because his disability "necessitate[ed] unpredictable, periodic treatment with

multiple medications that prevented him from traveling to the office to work on classified

systems or being effective while working from home[.]"  Def.'s Mem. at 10.  In response, the

plaintiff argues that "[a]s early as 2008, [he] was permitted to request situational telework if he

woke up in the morning and realized that his pain-level necessitated that he take medications that

would prohibit him from driving to the office."  Pl.'s Opp'n at 8.  As support for his position, the

plaintiff states that he "received fully successful performance ratings on his 2008 and 2009

Performance Evaluations."  Id.; see id., Ex. 1 (Excerpts from the Report of Investigation ("Pl.'s

ROI Excerpts")) at 391–406, ECF No. 65-3.

However, for several reasons, the plaintiff has not established a <u>prima facie</u> case of failure to accommodate because he has not shown that "with [a] reasonable accommodation [he] could perform the essential functions of the position" and that "the employer refused to make such accommodations." <u>Buie</u>, 85 F. Supp. 3d at 171–172.  First, the plaintiff argues that he could perform the essential functions of the position via "the exact accommodation he would . . . re-request in 2010[,]" Pl.'s Opp'n at 9, but the evidence he proffers does not support that position.  Specifically, the plaintiff argues that "no formal application was required by management [prior to 2010,]" Pl.'s Opp'n at 8, but the email he references does not support that position, <u>see</u> <u>id.</u>, Ex. 3 (June 9, 2008 RA Email, Fitzgerald-Bell ("Fitzgerald-Bell Emails")) at 3-4, ECF No. 65-5.  The plaintiff's supervisor merely states that "[f]or [her own] clarification, [the plaintiff] and [his supervisor] discussed the [situational telework] request when [they] met earlier and [she] disapproved it based on the ongoing and critical planning needed to start up [the Federal Information Security Management Act or] [']FISMA['] 2008 that [the plaintiff] w[as] leading." <u>Id.</u>, Ex. 3 (Fitzgerald-Bell Emails) at 3.  Aside from the plaintiff's declaration, Pl.'s Decl. ¶ 6 (representing that "[f]rom 2008 through the end of 2009, [his] supervisor, Karen Bell, regularly granted [his] requests to telework on those mornings[ when he could not come to work due to the side effects of his pain medication]"), there is no other "factual data[,]" <u>Pub. Citizen Health Rsch. Grp.</u>, 185 F.3d at 908, in the record that supports the plaintiff's position that he could perform the essential functions of his position, <u>see</u> <u>Greene</u>, 164 F.3d at 675 ("[a]ccepting such conclusory allegations [in an affidavit] as true, therefore, would defeat the central purpose of [ ] summary judgment").  Thus, there is nothing in the record that supports the plaintiff's position that based on the accommodations the plaintiff requested, he was able to perform the essential functions of his position.

Second, the plaintiff's allegation that he had situational telework approved prior to the 2010 denials is immaterial because "all employees who had prior approved telework agreements [were required] to withdraw those agreements and resubmit new ones[,]" Def.'s Facts ¶ 34; Pl.'s Facts ¶ 34 (emphasis added); see Reagan-Diaz v. Session, 246 F. Supp. 3d 325, 338 (D.D.C. 2017) ("a plaintiff alleging a failure to accommodate a disability must establish h[is] ability to perform the essential functions of h[is] job at the time the employer denied h[is] request for accommodation[]" (internal quotation marks omitted)).  Because the Agency rescinded all prior telework agreements for all employees at that time, it also could not be the case that the denial of the plaintiff's situational telework requests were specific to him because of his disability.  See e.g., Menoken v. Burrows, 656 F. Supp. 3d 98, 106 (D.D.C. 2022) ("The employee at all times retains the burden of persuading the trier of fact that [he] has been the victim of illegal discrimination due to h[is] disability[.]" (internal quotation marks omitted)).

The plaintiff next argues that "[t]he majority of [his] job involved accessing non-classified information that he could easily perform from home."  Pl.'s Opp'n at 9.  However, this argument does not demonstrate that he could perform all of the essential functions of his position with his requested accommodation because his work also "included work on classified systems which could not be performed via telework."  Def.'s Mem. at 13.  As an initial matter, "[i]n determining whether a function is essential to a particular position, the Court is to grant the employer substantial deference[,]" Congress v. Gruenberg, 643 F. Supp. 3d 203, 218 (D.D.C. 2022), in regards to "the fundamental job duties of the [ ] position the individual with a disability holds[,]" 29 C.F.R. § 1630.2(n)(1) (defining "[e]ssential functions" under the Rehabilitation Act).  Although, "[p]hysical presence at or by a specific time is not, as a matter of law, an essential function of all employment[,]" Solomon, 763 F.3d at 10, the law of this Circuit

counsels against employers being required to approve "difficult . . . [in]consistent and [un]predictable work schedule[s,]" Reagan-Diaz, 246 F. Supp. 3d at 338; see also Doak, 798 F.3d at 1106 (employer entitled to summary judgment where "it was essential to [the plaintiff]'s job that []he be present for interactive meetings during normal business hours and that the accommodations []he requested would not have enabled h[im] to perform that function[]").

The Court, according "substantial deference[,]" Gruenberg, 643 F. Supp. 3d at 218, to the Agency, must conclude that "work on classified systems[,]" Def.'s Mem. at 13, was an essential function of the plaintiff's position.  The plaintiff contends that "[o]nly a small portion of [his] work was classified[,]" Pl.'s Facts ¶ 42, which arguably is true considering the length of time he worked for the Agency, see Def.'s Facts ¶ 1; Pl.'s Facts ¶ 1.  However, the plaintiff puts forth no supporting evidence that classified work was not "[an] essential function[] of h[is] job at the time the employer denied h[is] request for [the situational] accommodation[,]" Reagan-Diaz, 246 F. Supp. 3d at 338 (emphasis added).  While the plaintiff may have had unclassified assignments at the time as well, see Pl.'s Facts ¶¶ 41–42, a significant reason he at times had his situational telework requests denied during the period at issue was precisely because "his work assignments were in the office[,] [ ] not at home [when] . . . [he] was working on a classified project[,]" Def.'s Mot., Ex. 2 (Def.'s ROI Excerpts) at 510; see id., Ex. 4 at 3 (Plaintiff's Responses to Defendants' Requests for Admissions, Interrogatories, and Production of Documents (August 29, 2019) ("Pl.'s Discovery Responses")) at 3, ECF No. 52-6 (containing the plaintiff's response wherein he admits that "the classified work assigned to [him] at the Agency was required to be performed in the workplace and could not be performed remotely[]").  Accordingly, a reasonable jury could not find the plaintiff's "request [for] situational telework [a reasonable accommodation] if he woke up in the morning and realized that his pain-level necessitated that he take medications that

would prohibit him from driving to the office[,]" Pl.'s Opp'n at 8, while still "perform[ing] the essential functions of the position[,]" Buie, 85 F. Supp. 3d at 172, where the functions included work on a classified project that he could not access at his home.

**2.  Whether the Agency Engaged in a Good Faith Interactive Process.**

The defendant also argues that "[the p]laintiff [ ] fails to carry his burden to demonstrate that the Agency refused to make reasonable accommodations." Def.'s Mem. at 12.  More specifically, the defendant argues that "[the p]laintiff was reasonably accommodated by the Agency on an interim basis while the Agency's formal interactive process played out." Id.  The plaintiff argues in response that the defendant did not engage in a good faith interactive process with him because: (1) "th[e] process was taking so long as to effectively be a denial of his [reasonable accommodation request,]" Pl.'s Opp'n at 10; (2) "[the d]efendants should have continued engaging with [the p]laintiff to see if he could be accommodated in his position" even after he applied for disability retirement in July 2011, id. at 11, and (3) "[the] interim [reasonable accommodation he was provided] was apparently just the standard situational telework available to all non-disabled employees[,]" id.

"The Rehabilitation Act contemplates an 'interactive process,'" Ali v. Pruitt, 727 Fed. App'x 692, 695 (D.C. Cir. 2018) (per curiam) (citing 29 C.F.R. § 1630.2(o)(3)), which is "a flexible give-and-take between employer and employee so that together they can determine what accommodation would enable the employee to continue working[,]" Ward v. McDonald, 762 F.3d 24, 32 (D.C. Cir. 2014) (internal quotation marks omitted).  "Both parties must engage in this interactive process in good faith, and neither 'should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability.'" Weatherspoon v. Azar, 380 F. Supp. 3d 65, 74 (D.D.C. 2019) (quoting Ward, 762 F.3d at 32).  Accordingly, "[t]o determine whether the employer held up its end of the bargain, courts look to factors such as whether the

22

employer 'obstructs or delays the interactive process' or 'fails to communicate, by way of initiation or response.'" Id. (quoting Ward, 762 F.3d at 32). Essentially, "courts should attempt to isolate the cause of the breakdown[,]" which, for instance, could occur "when the parties are missing information that can only be provided by one of the parties[; in such situations,] the party withholding the information may be found to have obstructed the process." Ward, 762 F.3d at 32 (internal quotation marks omitted). Put succinctly, "to establish that h[is] request [for a reasonable accommodation] was 'denied,' [the plaintiff] must show either that the [defendant] in fact ended the interactive process or that it participated in the process in bad faith." Id.

Here, for several reasons, the plaintiff has not proffered evidence to establish that the defendant "obstruct[ed] or delay[ed] the interactive process[,]" Weatherspoon, 380 F. Supp. 3d at 74, or "fail[ed] to communicate[] by way of initiation or response[,]" id. First, there is no indication in the record that the defendant was at fault for "th[e] process [ ] taking so long[,]" Pl.'s Opp'n at 10, to resolve the plaintiff's reasonable accommodation request. The plaintiff contends that it was not until June 4, 2010, "nearly six months after [he] told Mr. Ikeanyi that he needed a[ reasonable accommodation]" when he was finally "told that the [Agency] . . . has not made a determination whether [he was] a qualified individual with a disability." Id. (internal quotation marks omitted). However, the record reflects that Mr. Ikeanyi told the plaintiff on February 4, 2010, that "if [he] want[ed] to pursue a request to allow [him] to work at home on the basis of reasonable accommodation, [to] please submit a request specifically for that and [the Office of Audits or] [']AUD['] will send [the] request to the personnel office to begin that process[.]" Id., Ex. 1 (Pl.'s ROI Excerpts) at 504. It was not until April 14, 2010, when the plaintiff finally submitted his request through the appropriate channel. See id., Ex. 1 (Pl.'s ROI Excerpts) at 329; see also Ali, 727 Fed. App'x at 696 ("[T]he law is well settled that employers

may impose procedural requirements on employees engaged in the Rehabilitation Act's

interactive process.").  The plaintiff's position is further undermined by the fact that he "[did not]

provide[] the [Agency] . . . with the necessary medical documentation until . . . November

20[1]0."  Def.'s Mem. at 15 (citing Def.'s Mot., Ex. 10 (Email from E. Miron to T. Fitzgerald

(November 30, 2010) ("Miron-Fitzgerald Emails")) at 2, ECF No. 52-12).  While "there are

certainly circumstances in which a long-delayed accommodation could be considered

unreasonable[,]" Mogenhan v. Napolitano, 613 F.3d 1162, 1168 (D.C. Cir. 2010) (internal

quotation marks omitted); see also Gruenberg, 643 F. Supp 3d at 224 (collecting cases), that is

not the case here where the plaintiff "fail[ed] to communicate, by way of . . . respon[ding

expeditiously,]" Weatherspoon, 380 F. Supp. 3d at 74, to the defendant's requests for the

plaintiff (1) to utilize the proper channel for making his accommodation request, and (2) to

provide for medical documentation, see e.g., Gruenberg, 643 F. Supp. 3d at 224 (finding a delay

of eighty days in accommodating a telework request reasonable where the defendant was waiting

for medical documentation from the plaintiff); see also Tobey v. Gen. Servs. Admin., 480 F.

Supp. 3d 155, 170 (D.D.C. 2020) (holding that granting interim accommodations while the

agency negotiated permanent reasonable accommodations does not constitute a breakdown of the

interactive process).

   The plaintiff's remaining arguments regarding whether the defendant engaged in a good

faith interactive process are equally unavailing.  The plaintiff argues that "[the d]efendant[]

should have continued engaging with [him] to see if he could be accommodated in his

position[,]" Pl.'s Opp'n at 11, but it was the plaintiff who effectively "ended the interactive

process[,]" Ward, 762 F.3d at 32, when he applied for disability retirement in July 2011, see

Def.'s Mot., Ex. 6 (Notification of Personnel Action (December 12, 2011) ("Plaintiff's Disability

Retirement SF-50")), ECF No. 52-8.  Furthermore, it is undisputed that an Agency doctor, Edward Miron, continued to assist in the plaintiff's request for an accommodation by considering whether he had a qualified disability until as late as November 2010.  See id., Ex. 10 (Miron-Fitzgerald Emails) at 1 ("[Edward Miron] gave an opinion to HR that [the plaintiff's] medical condition could be considered a Disability under [the Americans with Disabilities Act].");  Def.'s Facts ¶ 65; Pl.'s Facts ¶ 65.

The plaintiff also takes issue with the defendant's position that permitting him to situational telework was merely an interim accommodation, alleging that it was "apparently just the standard situational telework available to all non-disabled employees."  Pl.'s Opp'n at 11.  However, "an employer is not required to provide an employee that accommodation he requests or prefers, the employer need only provide some reasonable accommodation."  Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1305 (D.C. Cir. 1998) (en banc) (internal quotation marks omitted).  Indeed, "an erratic and unpredictable accommodation, such as an open-ended 'work whenever [or wherever] you want schedule' is unreasonable as a matter of law."  Doak, 19 F. Supp. 3d at 276; see e.g., Solomon, 845 F. Supp. 2d at 71 ("D.C. Circuit precedent makes clear that an employee's request to work whenever he or she wants is unreasonable as a matter of law.").  The plaintiff did not, and likely cannot show that "[the] defendant failed to provide [him an interim reasonable accommodation,]" Buie, 85 F. Supp. 3d at 172, where his unpredictable situational telework request from the defendant was not a "flexible give-and-take[,]" with the objective of "determin[ing] what accommodation would [have] enable[d] the [plaintiff] to continue working."  Ward, 762 F.3d at 32.  Thus, the interim accommodation offered by the Agency, i.e., the use of unscheduled leave, see Def.'s Mem. at 12, was reasonable as it could have "allowed [the plaintiff] to perform the essential functions of h[is] job[,]" Menoken, 656 F. Supp. 3d at 106,

while the interactive process continued.  But again, as the defendant correctly points out, it was

the plaintiff who ultimately ended the interactive process before a final reasonable

accommodation could be determined when he applied for disability retirement with the

assistance of his own supervisor, see Def.'s Mot., Ex. 5 (Supervisor's Statement In Connection

With Disability Retirement Under the Civil Service Retirement System and the Federal

Employees Retirement System (July 22, 2011) ("Supervisor's Statement")), ECF No. 52-7.  By

taking this action, the plaintiff also "admitted that the medicines [he took for his disability] place

him in a state that does not allow him to be effective."  Id.; see also Def.'s Mot., Ex. 3

(Deposition of Timothy C. Fitzgerald (July 9, 2012) ("EEO Deposition Transcript")) at 99:12–

100:22, ECF No. 65-5 (the plaintiff acknowledging that he agrees with all of his supervisor's

statements made in support of his disability retirement).

As "courts should attempt to isolate the cause of the breakdown and then assign

responsibility[,]" Ward, 762 F.3d at 32, here, the Court finds that the defendant "engage[d] in

th[e] interactive process in good faith[,]" Weatherspoon, 380 F. Supp. 3d at 74, where it was the

plaintiff who "failed to make the request [for situational telework] in advance[, as he was

required to do], which prevented his managers from designing an appropriate preapproved and

unclassified work plan," Def.'s Mem. at 13.  Accordingly, for all of the above reasons the Court

has identified in this section, "a reasonable jury could [not] return a verdict for the [plaintiff].'"

Steele, 535 F.3d at 692.  Therefore, the Court must find that the plaintiff has failed to establish a

prima facie case of a failure to accommodate claim, and grants summary judgment to the

defendant on the plaintiff's Rehabilitation Act claim as to his requests for situational telework.

**C.  Whether the Plaintiff Administratively Exhausted his Hostile Work Environment
     Claim under Title VII.**

Next, the defendant argues that several of the plaintiff's Title VII claims "were not fully administratively exhausted and are thus not properly before this Court[,]" because "through his then-attorney, [the plaintiff] [ ] was not appealing these [adverse] findings[,]" after the Agency entered its final decision.  Def.'s Mem. at 3 n.1; see Compl., Ex. (2017 EEO Decision) at 4; Answer at 14 (Listing multiple affirmative defenses including failure to timely exhaust several claims).  The plaintiff's brief in opposition to the defendant's motion is silent on this argument. See generally Pl.'s Opp'n.  Nonetheless, in appearing to the Court that the facts surrounding the plaintiff's failure to exhaust his administrative remedies for these claims are undisputed, the Court, for the following reasons, concludes that the defendant is correct that the plaintiff has failed to timely exhaust his hostile work environment claims.

For a plaintiff to exhaust his remedies under Title VII, he must first "initiate contact" with an EEO counselor within 45 days of the allegedly discriminatory conduct. 29 C.F.R. § 1614.105(a)(1); see also In re James, 444 F.3d 643, 644 (D.C. Cir. 2006).  "At the initial counseling session, the EEO counselor 'must advise individuals in writing of their rights and responsibilities,' including their right to an administrative hearing and their right to file an administrative complaint."  Achagzai v. Broad. Bd. of Gov'rs, 170 F. Supp. 3d 164, 171 (D.D.C. 2016) (quoting 29 C.F.R. § 1614.105(b)).  If the dispute is not resolved within 30 days, the counselor is required to provide the employee with "a notice explaining the administrative complaint procedure."  In re James, 444 F.3d at 644; see also 29 C.F.R. §§ 1614.105(d); 1614.106.  "The employee then has 15 days to file an administrative complaint with his or her agency."  Achagzai, 170 F. Supp. 3d at 172.  "After the agency has the opportunity to investigate the matter, the complainant may demand an immediate final decision from the agency or a hearing before an EEOC administrative law judge."  Koch v. Walter, 935 F. Supp. 2d 143, 149

(D.D.C. 2013).  Only then may "[t]he employee [ ] file suit in federal district court within 90 days of receipt of the agency's or the EEOC's final determination or after 180 days have elapsed since the filing of a complaint with the agency or the EEOC, if neither has taken a final action." Achagzai, 170 F. Supp. 3d at 172.  Furthermore, "the exhaustion requirement extends to those individuals filing a claim under the Rehabilitation Act or Title VII violations in the workplace [as well]."  Broom v. Caldera, 129 F. Supp. 2d 25, 28 (D.D.C. 2001).

   To be sure, a plaintiff's failure to exhaust under Title VII "does not deprive the federal district courts of jurisdiction."  Achagzai, 170 F. Supp. 3d at 174.  Indeed, "[a]s the Supreme Court has admonished, 'when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.'"  Id. (quoting Arbaugh, 546 U.S. at 515–516).  "Applying this principle, the D.C. Circuit has held in unequivocal terms that '[ ] Title VII . . . [does not] incorporate[] a jurisdictional exhaustion requirement.'"  Achagzai, 170 F. Supp. 3d at 174 (quoting Menominee Indian Tribe of Wis. v. United States, 614 F.3d 519, 527 (D.C. Cir. 2010)).  This Circuit has also repeatedly recognized that the exhaustion defense "is similar to a statute of limitations."  In re James, 444 F.3d at 647; see also Colbert v. Potter, 471 F.3d 158, 167 (D.C. Cir. 2006) (same); Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997) (explaining that the Title VII exhaustion requirement "function[s] like [a] statute of limitations").  Therefore, "the Title VII . . . exhaustion requirement[] [is] properly viewed as [an] affirmative defense[]," Achagzai, 170 F. Supp. 3d at 174, and "the defendant bears the burden of pleading and proving it[,]" Bowden, 106 F.3d at 437.

   "Motions for failure to exhaust administrative remedies [under Title VII] are properly analyzed under Federal Rule of Civil Procedure 12(b)(6)."  Morris v. Jackson, 842 F. Supp. 2d

171, 176 (D.D.C. 2012).  That is because "failure to exhaust is an affirmative defense[] [and] the defendant bears the burden of proof on the issue."  Id.  "Once a defendant has met its burden, the burden shifts to the plaintiff to make the case that dismissal is not warranted."  Id.  Importantly, "administrative exhaustion works to preserve the court's time and resources by authorizing only the presentation of claims that have been diligently pursued by the plaintiff."  Hamilton v. Geithner, 743 F. Supp. 2d 1, 9 (D.D.C. 2010) (Walton, J.) (internal quotation marks omitted).

Here, the defendant has met its burden of pleading, see Answer at 14, and "proving[,]" Bowden, 106 F.3d at 437; see Def.'s Mem. at 3 n.1; Compl., Ex. (2017 EEO Decision) at 4, that the plaintiff has failed to exhaust his administrative remedies with regard to both his hostile work environment claim, and his retaliation claim for the denial of his situational telework.  The plaintiff attached to his Complaint a copy of the EEOC decision wherein it makes clear that

> [a]s an initial matter, . . . on appeal, [the] Complainant, through his attorney, indicated that he was not appealing the finding of no discrimination with regard to claim 3 (assignment of tasks outside his position description/hostile work environment).  He also stated he was not appealing the finding that he was not discriminated against on the bases of his race, color, age or disability with regard to his non-selection. . . Therefore, [the] Complainant framed his appeal as concerning: (1) the conclusion that he had not proven that his non-selection was motivated by retaliation for his prior EEO activity, and (2) the determination that the Agency's refusal to grant him situational telework was lawful.

Compl., Ex. (2017 EEO Decision) at 4.

If the plaintiff elected not to appeal any of his claims, he would have had "within [ninety] days of receipt of the agency's [final action,]" Achagzai, 170 F. Supp. 3d at 172 (citing 29 C.F.R. § 1614.407), to file a lawsuit in a federal district court.  As the EEOC decision the plaintiff attached to his Complaint makes clear, the Agency issued its final order on June 4, 2015, see Compl., Ex. (2017 EEO Decision) at 3,—therefore, the plaintiff had ninety days from his receipt of that order to file a lawsuit in federal district court.  However, the plaintiff did not file the

instant case until November 7, 2017, see id., long after he abandoned the above referenced

claims in the administrative process.[5]

Accordingly, the Court concludes that the plaintiff's Title VII claims are unexhausted to

the extent he alleges being subjected to a (1) hostile work environment, including the assignment

of tasks outside of his position, and (2) retaliation for his EEO activity by denying him

situational telework,[6] and it must grant summary judgment to the defendant on his exhaustion

argument.

**D.  Whether the Plaintiff was Retaliated Against by the Defendant by not being Selected for the GS-15 Specialist Position.**

In regards to the plaintiff's surviving Title VII claim, the defendant argues that "[t]he

Agency did not retaliate against [the p]laintiff for his prior EEO activity."  Def.'s Mem. at 16.

More specifically, the defendant argues that "[t]he undisputed facts . . . demonstrate that the

selecting official, Ms. Bell, found Mr. Ikeanyi to be better qualified for the position than [the

p]laintiff on the basis of experience as well as the candidates' responses during the structured

interview."  Id.  The plaintiff makes several arguments in response that track the factors outlined

in Figueroa v. Pompeo, 923 F.3d 1078, 1087–1088 (D.C. Cir. 2019): (1) that "[the d]efendant[ ]

did not provide any evidence other than testimony in support of the selection[,]" Pl.'s Opp'n

---

[5] In an abundance of caution, the Court does note that a plaintiff may argue "waiver, estoppel, and equitable tolling[]" to excuse his decision not to appeal in a timely fashion.  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).  However, it is noteworthy that the plaintiff was represented by an attorney at the time, see Compl., Ex. (2017 EEO Decision) at 4, and through his attorney he made the strategic decision not to "diligently pursue[,]" Hamilton, 743 F. Supp. 2d at 9, his appeal in regards to the above referenced claims, making it exceedingly difficult for the Court to excuse that decision, accord Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen., 71 F.4th 51, 58 (D.C. Cir. 2023) ("[equitable tolling] is not available to a litigant who misses a deadline because of a garden variety claim of excusable neglect or a simple miscalculation." (internal quotation marks omitted)).  Moreover, the plaintiff has chosen to stay silent, see generally Pl.'s Opp'n, after the defendant raised these affirmative defenses in his answer, see Answer at 14, and advanced them in his motion for summary judgment, see Def.'s Mem. at 3 n.1.

[6] The plaintiff in his Complaint does not allege the other administratively abandoned claim that he was "discriminated against on the bases of his race, color, age or disability with regard to his non-selection[.]"  Compl., Ex. (2017 EEO Decision) at 4.  Accordingly, the Court need not address that claim.

at 13; (2) that "[t]here is evidence that Ms. Bell's non-selection [decision] was motivated by retaliation, not her proffered non-discriminatory reason[,]" id. at 14; (3) that "[t]he non-discriminatory explanation is not facially credible[,]" id. at 15, and (4) that "[t]he evidence does not present a 'clear and reasonably specific explanation so that the employee has a full and fair opportunity to attack the explanation as pretextual[,]" id.  The defendant first responds that "[the p]laintiff's Figueroa arguments are meritless[.]"  Def.'s Reply 9–13.  The defendant then concludes that "[the p]laintiff has failed to show that [the d]efendant acted with any discriminatory or retaliatory animus in his non-selection[] [and the d]efendant is entitled to summary judgment as a matter of law."  Id. at 13–14.  The Court will address each argument in turn.

1.  **Title VII Retaliation and the Plaintiff's Burden of Proof.**

"Title VII prohibits retaliation against an employee 'because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." Salak v. Pruitt, 277 F. Supp. 3d 11, 21 (D.D.C. 2017) (quoting 42 U.S.C. § 2000e-3(a)).  "Under the familiar burden-shifting framework that arose from the seminal Supreme Court case of McDonnell Douglas Corp. v. Green, 422 U.S. 792, . . . a plaintiff alleging retaliation and relying on circumstantial evidence first points to evidence of a prima facie case—i.e., '(1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two.'"  Id. (quoting Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009)).

Because of the difficulty plaintiffs often face producing direct evidence of retaliation, "relying on circumstantial evidence is [a] permissible method of establishing one's [prima facie] case[.]"  Id.  "If a plaintiff identifies such evidence, the burden of production—but not

persuasion—shifts to the defendant to provide 'a legitimate, nondiscriminatory [or non-retaliatory] reason' for its actions." Id. (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142 (2000)).

Courts must be mindful, however, not to "relieve the employer of its burden[] at the second prong[] 'to articulate a legitimate, nondiscriminatory reason for its action.'" Figueroa, 923 F.3d at 1087 (quoting Wheeler v. Georgetown Univ. Hosp., 812 F.3d 1109, 1114 (D.C. Cir. 2016)). Of the "[n]umerous factors [that] may come into play at the second prong[,]" id., four specifically are "paramount in the analysis for most cases[,]" id., to determine whether the employer's evidentiary proffer is "adequate[,]" id. First, "the employer must produce evidence that a factfinder may consider at trial (or a summary judgment proceeding)." Id. Second, "the factfinder, if it 'believed' the evidence, must reasonably be able to find that 'the employer's action was motivated by' a nondiscriminatory reason." Id. (quoting Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1151 (D.C. Cir. 2004)). Third, "the nondiscriminatory explanation must be legitimate. In other words, the reason must be facially 'credible' in light of the proffered evidence." Id. at 1088 (quoting Bishopp v. Dist. of Columbia, 788 F.2d 781, 788–89 (D.C. Cir. 1986)). Fourth, "the evidence must present a 'clear and reasonably specific explanation[,]" id. (quoting Segar v. Smith, 738 F.2d 1249, 1269 n.13 (D.C. Cir. 1984), because "a plaintiff cannot be expected to disprove a defendant's reasons unless they have been articulated with some specificity[,]" id. (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1014 (1st Cir. 1979)).

If the defendant provides such a reason for the challenged employment action, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s]," Reeves, 530 U.S. at 142–43, which "leav[es] only the ultimate question of 'discrimination vel non[.]'" Salak, 277 F. Supp. 3d at 21 (quoting Reeves, 530 U.S. at 142–43)). At that point "the plaintiff

[still] bears the burden of showing that a reasonable jury could find that the defendant's proffered reasons are pretextual and that the real impetus for the adverse action was discriminatory or retaliatory animus."  Id.

As an initial matter, the Court need not meander in an "unnecessary and improper sideshow[,]" Jones, 557 F.3d 678, that is assessing whether the plaintiff has satisfied his burden to show a prima facie case, see Brady v. Off. of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008), of retaliation.  Where "the Brady shortcut applies[,]" Figueroa, 923 F.3d at 1087 (noting that the Brady shortcut applies "only if the parties properly move past the second step"), the Court "must resolve one central question[,]" Brady, 520 F.3d at 494.  That question being: "[h]as the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee[?]"  Id.  For the following reasons, the Court finds that the defendant has satisfied the Figueroa factors and has also articulated a legitimate reason for not selecting the plaintiff for the position and the plaintiff has not met his burden once it shifted back to him.

**2.  Whether the Defendant has Articulated a Legitimate, Nondiscriminatory Reason for not Selecting the Plaintiff for the GS-15 Specialist Position.**

Each Figueroa factor supports the Court's finding that the defendant offers "a legitimate, nondiscriminatory [or non-retaliatory] reason for its actions[,]" Salak, 277 F. Supp. 3d at 21.  First, the plaintiff's argument that "[the d]efendants did not provide any evidence other than testimony in support of the selection[,]"  Pl.'s Opp'n at 13, is unavailing.  Not only does the plaintiff fail to cite any authority that testimony alone is not sufficient, he also neglects to acknowledge that some of the testimony offered by the defendant was his own, Def.'s Mot., Ex. 1 (Relevant Excerpts of Plaintiff's October 29, 2019, Deposition Transcript ("2019

Deposition")) at 52:12–14, ECF No. 52-3 ("If I was selected, I would have had to have an auditor assigned to my staff to support the GAGAS side of the house on audits"); Def.'s Reply, Ex. 11 (Supplemental Relevant Excerpts of Plaintiff's October 29, 2019, Deposition Transcript ("2019 Deposition Supplement")) at 53:18– 22, ECF No. 74-1 (Q: "Would you agree that in order to properly supervise that auditor working on your staff, you would have had to know audit regulations and [Generally Accepted Government Auditing Standards or] [']GAGAS[']? A: Yes."). Moreover, Ms. Bell's testimony is just the type of evidence that has been considered sufficient to satisfy the second prong of McDonnell Douglas. Pl.'s Opp'n, Ex. 1 (Pl.'s ROI Excerpts) at 450 ("Based on prior work experience and responses to the structured interview about how the applicant met the qualifications for this position, including adherence to G[AGAS], there were other candidates more qualified than the [plaintiff] to fill this position. For example, the [plaintiff] did not feel that his writing capability was very strong and needed improvement."); see Holcomb v. Powell, 433 F.3d 889, 896 (D.C. Cir. 2006) (affirming summary judgment in part to the defendant as to whether the defendant's proffered testimony satisfied the second prong of the McDonnell Douglas test).

Second, the plaintiff's argument that "[t]here is evidence that Ms. Bell's non-selection [decision] was motivated by retaliation, not her proffered non-discriminatory reason[,]" Pl.'s Opp'n at 14, is inconsistent with the law of this Circuit. The Supreme Court in Reeves, and subsequently adopted by this Circuit in Figueroa, counsel that "District Court[s] may not engage in 'credibility assessment[s]' of witnesses who present evidence[.]" Figueroa, 923 F.3d at 1087 (quoting Reeves, 530 U.S. at 142). The only question for the Court to determine at this juncture is whether "the employer [ ] raise[d] a genuine issue of fact as to whether the employer intentionally discriminated against the employee." Id. (internal quotation marks omitted). Thus,

the Court need not consider whether Ms. Bell's testimony is truthful at this juncture.  The Court

merely must assess whether a factfinder, if Ms. Bell's words are believed, "[could] reasonably be

able to find that 'the employer's action was motivated by' a nondiscriminatory reason."  Id.

(quoting Teneyck, 365 F.3d at 1151).  Such a conclusion would be reasonable where simply put,

Ms. Bell, as stated above, has provided testimony to support that the non-selection of the plaintiff

was motivated by non-discriminatory reasons.

Third, contrary to the plaintiff's position, the non-discriminatory evidence proffered by

the defendant is in fact "facially credible."  Pl.'s Opp'n at 15.  As the defendant correctly notes,

as to the IT Specialist role the plaintiff applied for, "ensuring each audit is conducted in

accordance with [Generally Accepted Government Auditing Standards or] [']GAGAS[']" was

identified as a "[m]ajor [d]ut[y]" of the incumbent in the public vacancy announcement for the

position.  Def.'s Mot., Ex. 2 (Def.'s ROI Excerpts) at 146.  Moreover, Ms. Bell also noted that

"[w]riting [wa]s a critical requirement for th[e] position[,]" and that the defendant admitted "[he]

did not feel that his writing capability was very strong and needed improvement."  Id., Ex. 2

(Def.'s ROI Excerpts) at 450.  This evidence clearly provides a "legitimate[,]" and facially

credible non-discriminatory reason for the plaintiff's non-selection for the position as required

under Figueroa. 932 F.3d at 1087.

Fourth, the defendant has proffered a "clear and reasonably specific explanation" for the

non-selection of the plaintiff for the position he sought.  Segar, 738 F.2d at 1269 n.13.  In other

words, the defendant has not "conceal[ed] the target[,]" Figueroa, 932 F.3d at 1091, for

pretextual challenges with unclear and irrelevant reasons for the plaintiff's non-selection.  As the

defendant notes, here, "the employer [has] articulate[d] specific reasons for th[e] applicant's

qualifications such as 'seniority, length of service in the same position, personal characteristics,

general education, technical training, experience in comparable work or any combination of such criteria." Def.'s Reply at 13 (quoting Figueroa, 923 F.3d at 1088). "Adherence to GAGAS and [ ] audit writing skills as specific reasons[,]" id., are reasonable explanations for an employer's decision to select one candidate for a position over another.

Accordingly, the Court finds that the defendant has proffered non-retaliatory and non-discriminatory reasons for the plaintiff's non-selection, and that the non-selection was not because of his prior EEO activity, but rather for "legitimate, [ ] [non-retaliatory] reason[s.]" Salak, 277 F. Supp. 3d at 21. Therefore, the Court is now left "only [with] the ultimate question of 'discrimination[ by retaliation.]'" Id.

### 3. The Plaintiff has Failed to Carry his Burden to Show Discrimination by the Defendant.

As discussed supra, in Section III.D.1, "the plaintiff [still] bears the burden of showing that a reasonable jury could find that the defendant's proffered reasons are pretextual and that the real impetus for the adverse action was discriminatory or retaliatory animus." Salak, 277 F. Supp. 3d at 21. The Court having already addressed a majority of the plaintiff's other arguments, his only real remaining allegation is that "Ms. Bell[] [had] knowledge and [a] negative impression of [the p]laintiff's prior EEO activity." Pl.'s Opp'n at 15. However, this unsupported and conclusory argument lodged in the plaintiff's opposition brief without any supporting evidence is insufficient to survive summary judgment. Pub. Citizen Health Rsch. Grp., 185 F.3d at 908 (Garland, J., concurring) ("[C]onclusory allegations unsupported by factual data will not create a triable issue of fact." (citations and internal quotation marks omitted)). Moreover, the plaintiff's non-selection occurred approximately two years after the EEO activity about which he alleges Ms. Bell had negative impressions, see Pl.'s Opp'n at 14–15, and such a time gap has been held to support the non-existence of a causal connection between an employee

taking protected action and receiving an adverse action against him, see Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (holding that a three- or four-month period is insufficient to show a causal connection); Lancaster v. Vance-Cooks, 967 F. Supp. 2d 375, 386 (D.D.C. 2013) (suggesting the same).  Accordingly, the Court must find that the plaintiff has failed to carry his burden to answer the "one central question[,]" and has failed to "produce[] sufficient evidence for a reasonable jury to find that the [defendant]'s asserted non-discriminatory reason was not the actual reason and that the [defendant] intentionally [retaliated] against [him.]"  Brady, 520 F.3d at 494.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion for summary judgment.

**SO ORDERED** this 31st day of May, 2024.[7]

REGGIE B. WALTON
United States District Judge

---

[7] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.